No. 4535.

J. D. BLAIR & CO. v. DANIEL TAYLOR· AND JACOB IRVING.—BERNARD McFEELY, Third Opponent.

·There is no statutory provision of law requiring direct action against the sheriff to compel him to comply with what the plaintiff considers his adjudication, and to fix the respect- ive rights of persons holding mortgages on the property sold under execution. The prac- tice has always been to proceed by rule, and this practice has been expressly recognized by the decisions of this court.

·The mere recital of an act of mortgage in a subsequent act acknowledging the obligations contained in the first act, does not, as to third parties at least, operate the reinscription of the first act. The subsequent acknowledgment may be sufficient to interrupt pre- scription as to the debt, but does not reinscribe the mortgage which secured it.

·Where the plaintiff's mortgage was in existence at the time of the sheriff's sale, and the mortgaged property was adjudicated to him, he had the right to retain the purchase money up to the amount of his debt, and the title to the property should have been made to him.

APPEAL from the Ninth Judicial District Court, parish of Rapides. *Orsborn*, J. *T. C. Manning*, for plaintiffs and appellants. *R. A. Hunter* and *G. L. Hall*, for third opponent and appellee.

Justices concurring: Ludeling, Taliaferro, Howell, Morgan.

MORGAN, J. Plaintiffs obtained an order of seizure and sale against a certain piece of property situated in the town of Alexandria, upon a · ·mortgage given to them on the third July, 1867, by one Nelson Taylor, to secure the payment of a promissory note payable on the fifteenth November, 1867, for eleven hundred and sixty-seven and twenty one- hundredth dollars, with interest at eight per cent. after maturity.

Nelson Taylor, the mortgageor, surrendered the property mortgaged ·to his assignee in bankruptcy, who, by order of court, sold the same, subject to all the mortgages, liens and incumbrances resting thereon. It was in the possession of Daniel Taylor, holding for himself or Jacob Irving (the defendants) when seized by the sheriff.

Prior to the day upon which it was advertised to be sold, Bernard McFeeley, filed his third opposition, in which he alleges that Nelson Taylor owes him seven hundred and fifty dollars, with five per cent. interest from the twenty-first December, 1859, to secure the payment ·of which he claims to hold a special mortgage, with vendor's lien and

Blair & Co. v. Taylor and Irving.

privilege on the property then to be sold by the sheriff, which mortgage, lien and privilege, he contends, was only recorded in the office of the recorder of mortgages where the property mortgaged was situated.

He alleges further that he obtained a release of the property from the assignee in bankruptcy upon the payment of about five hundred and fifty dollars; that this release was necessary in order to protect it from being absorbed; that it was as much in the interest of plaintiffs as his own that this release was effected, and that they are bound to colate and refund to him a *pro rata* portion of the money expended by him in the protection and preservation of the property in question.

He claims that he is entitled to be paid out of the proceeds of the sale which was to take place by preference and privilege over all others, the amount of his alleged mortgage claim, and the costs incurred by him for the preservation of the property.

Blair & Co. deny McFeeley's mortgage; that if it ever existed it was lost for want of reinscription. They allege that the pretended mortgage given in 1866 is not a re-establishment of the mortgage of 1859, under the act of the Legislature, and that it is not a valid original mortgage for want of essential features prescribed for such instruments by the laws.

The sheriff returns that, after due advertisement, he offered the property for sale, on the second July, 1870, upon which day the third opposition of McFeeley was served on him, commanding him to retain in his hands five hundred and fifty dollars of the proceeds of the sale, if so much remained in excess of the special mortgage and vendor's lien in favor of McFeeley; that after declaring the conditions of the sale, and the amount of the third opposition, he cried the property at public auction, when Blair & Co., through their counsel, bid the sum of $1025, and that being the highest bid, the property was adjudicated to them. That he then called on their counsel to comply with the terms of the sale, and the demands of the third opposition, which he refused to do. That he then notified the counsel that he would offer the property again immediately at his risk, which he did on the same day, when the last and highest bid of $1200 having been made by Bernard McFeeley, the same was adjudicated to him.

Before, however, the second adjudication was made, Blair & Co. took a rule upon the sheriff to show cause why he should not make title to them of the property seized under their execution and purchased by them, alleging that he refuses to make title unless they will pay into his hands the whole amount of their bid, because McFeeley had filed a third opposition, claiming that he has a mortgage upon the property sold for $1144, or thereabouts, which he alleges is prior to theirs. They allege that no such mortgage exists or is upon the re-

cords of the recorder's office, for that or any other sum in favor of McFeeley, and that if he ever had such mortgage it has been and is extinguished.

*First*—Because the notes which McFeeley holds, and which he claims are obligations of Nelson Taylor, are prescribed as to said Taylor.

*Second*—Because the mortgage which McFeeley claims upon the property sold is perempted for want of reinscription in ten years, the same purporting to have been given on the twenty-first December, 1859, and that it has not been reinscribed ; and

*Third*—Because the loss of the public records of his mortgage (if such be alleged) has not been supplied as by law provided and permitted.

The second sale and adjudication was made in spite of this rule, and the title was transferred to McFeeley.

Before answering to the merits of the rule, McFeeley excepted to the proceeding, upon the ground that plaintiffs could not proceed by rule to test his right of mortgage, or his title to the property which he holds under the conveyance made to him by the sheriff, but that he should have been proceeded against by the direct revocatory action. The exception was referred to the merits and overruled.

It is urged in this court that this judgment was erroneous, and that the exception should have been maintained.

We are not of the opinion that the authorities cited by McFeeley's counsel show an error in this ruling of the court. The decision in the case of Weeks *v.* Flower and als., 9 La. 379, is that where a purchaser is in possession under a conveyance, the question of fraud can not be inquired into collaterally, in a case commencing with a seizure ; that the party complaining must bring a direct action.

In Kirkland against the Gas Company, 1 An. 299, it was held that where the purchaser of an immovable is in possession under a conveyance not void upon its face, in order to annul the sale for fraud, recourse must be had to a direct action.

In Weld *v.* Peters, 1 An. 432, the court say that a judgment creditor can not treat a sale of a slave made *bona fide* by his debtor and accompanied by possession, as null, and seize the slave in the hands of the purchaser.

In Nimmo *v.* Allen, 2 An. 451, it was held that where the creditors of a vendor wish to annul a sale on the ground of fraud, they must resort to a direct action. But we know of no statutory provision of law which compels a plaintiff in execution to bring a direct action against the sheriff to compel him to comply with what the plaintiff considers his adjudication, and to fix the respective rights of persons holding mortgages on the property sold under execution. The practice has, we believe, always been to proceed by rule, and this practice has

been expressly recognized by the adjudications of this court. In Larthet *v.* Hogan and al. 1 An. 330, it was held that where the property of one against whom judgment has been rendered appears to be subject to privileges or mortgages, entitled to a preference over the judgment creditor, the latter may, by a rule to show cause, as incidental to the proceedings had for the purpose of selling the property, call upon those claiming such privileges or mortgages, to show cause why they should not be erased. The seizing creditor can not be required to resort to a direct action against persons holding such privileges or mortgages. And this decision was recognized as the law of the case in Merrick *v.* McCausland, 24 An. 256.

We therefore think that the exception was properly overruled.

On the merits, we think that the claim for $550, alleged by McFeeley to have been paid by him to the assignee in bankruptcy, admitting it to be valid if it existed, which we do not pass upon, has not been proved. Indeed we have searched the record in vain for any testimony to establish that it was ever paid.

As to his claim on account of the purchase price of the property sold, we think it is barred by prescription. The original act of sale was passed on the twenty-first December, 1859, and the notes given in payment therefor were payable in one and two years from that date. The last note was, therefore, due on twenty-first December, 1861. His claim never seems to have been advanced until he filed this opposition on the thirtieth June, 1870. The last note was prescribed on the twenty-first December, 1866.

He contends that prescription has been interrupted, and the debt acknowledged in time to save him. But we do not think he has been successful.

It is true that on the second March, 1866, John Clark, Nelson Taylor and McFeeley, went before the recorder of the parish of Rapides and declared that, whereas, on the twenty-first January, 1860, John Clark transferred to Taylor the property sold under Blair's execution in this case; and that the said Taylor, in full payment for said property, assumed the payment of and bound himself to take up the one-half of the following described notes, to wit: The three following notes, executed by John Clark to and in favor of Bernard McFeeley, dated December 21, 1859, (describing the notes), the three said obligations being mortgage notes, with vendor's privilege on the property sold by McFeeley to Clark, by act executed before Kilpatrick, recorder, on the twenty-first December, 1859, the one-half of which was on the date first herein above mentioned, sold to said Taylor by Clark, at which time McFeeley promised to accept Taylor for the payment of the one-half of said notes, said one-half of the same amounting to $1000, all of which was passed before the said recorder and duly recorded in

his office, the records of which were destroyed by fire on the fourteenth May, 1864. Now, therefore, appeared before the recorder, John Clark, who declared that the sale then passed to Taylor and herein before described was valid, and that he did then and there make a title to said Taylor, guaranteeing him in the same, and that the said Taylor assumed to take up one-half of the amount due by him to McFeeley as hereinbefore stipulated, the first note of which has been taken up and paid, viz., $500, and that this instrument is executed and signed in lieu of the one passed and destroyed on the fourteenth May, 1864.

But it was the act of 1859 which put the mortgage on the property, and we do not find that this act has ever been reinscribed. It is true it is referred to in the act of 1860, and in the act of 1866, but we do not think that the mere recital of an act of mortgage in a subsequent act, acknowledging the obligations contained in the first act, as to third parties at least, operates the reinscription of the first act. The subsequent acknowledgment may be sufficient to interrupt prescription as to the debt, but it does not reinscribe the mortgage which secured it, and it is the question of the peremption of the mortgage—not the debt—which is in controversy here. We think the opponent's mortgage, created in 1859, expired in 1869, and that plaintiffs' mortgage having been in existence at the time of the sheriff's sale, he had a right to retain the purchase money up to the amount of his debt, and that the title to the property should have been made to him.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be avoided, annulled and reversed, and it is further ordered, adjudged and decreed that the sheriff of the parish of Rapides do make title to the property herein sold by him to the plaintiffs upon their complying with the terms of their bid, over and above the sum due to them on account of their mortgage, and that the mortgage claimed by Bernard McFeeley be declared extinguished as regards Blair & Co., and of no effect.

Rehearing refused.